UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA,     :
                         :
           Plaintiff,     :
                         :
         v.             :    Case no. 2:11-cr-37-1
                         :
                         :
NATHANIEL GOODALE,       :
                         :
           Defendant.     :

## OPINION and ORDER

On April 21, 2011, a grand jury indicted Defendant Nathaniel Goodale for possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).  The charges stem from Defendant's secret video recording of his allegedly 17-year-old stepdaughter in the bathroom while she disrobed to shower and use the toilet, among other things.  The charge is primarily based upon the video evidence.  *See* Opp'n to Mot. *in Limine 6*, ECF No. 8.

Defendant has filed two motions.  First, Defendant submits a motion *in limine* to exclude video evidence and a related motion to dismiss, and second, Defendant moves to dismiss for lack of jurisdiction on the basis that the statute is unconstitutional.

## Statement of the Facts

Defendant Nathaniel Goodale lived with his stepdaughter (hereinafter "J1") and her mother in a residence in Vermont. The government alleges that Defendant secretly videotaped and photographed J1 using the bathroom during the time period from fall of 2009 through the summer of 2010.  Superseding Indictment, ECF No. 12.  When Defendant first began making these recordings, he would stand outside the bathroom window and take photos and short videos.  Opp'n to Mot. *in Limine* 7.  In July 2010, Defendant told J1 he had romantic feelings for her.  After this confession, Defendant began secretly videotaping J1 from inside the bathroom.  These recordings are 20-25 minutes long, and capture J1's nude pubic area when she entered the shower and got on and off the toilet.  *Id.*

According to the government, Defendant created these recordings by entering the bathroom immediately before J1 and placing a video camera in a woven basket on a shelf across from the area of the bathroom containing the toilet and shower entry. The recordings reveal Defendant carefully positioning the video camera lens through a hole in the basket to capture the toilet and shower entry area of the bathroom.  The government estimates that the area captured by the camera constituted around half of the total area in the bathroom.  *Id.* at 8.

Defendant would save these videos on an external hard drive and on a thumb drive.  Defendant further selected certain still

images to save on the thumb drive which he culled from these videos.  Defendant later described the images on the thumb drive as his favorite images.  These still images depicted J1's nude pubic area exposed as she used the toilet or shower. Additionally, the thumb drive contained images of J1 and her girlfriends that Defendant allegedly took without permission. These images depict J1 and her friends engaging in various activities including many images of the girls in bathing suits. Defendant used a computer program to alter these images by transforming J1's bikini or clothing into a nude color to make her appear naked.  *Id.* at 8-9.

Law enforcement first learned that Defendant was secretly videotaping J1 in the bathroom in the summer of 2010.  After Defendant revealed the videotaping during a visit with a couple's therapist, the therapist reported his behavior to the Department of Children and Family Services who then contacted the Vermont State Police.  On August 11, 2010, Detective Aimee Nolan of the Vermont State Police contacted J1 and her mother. J1 had only recently learned that Defendant had been videotaping her in the bathroom, and J1 became extremely upset when discussing the situation with Detective Nolan.  J1 explained that she never felt comfortable around Defendant, including the way he hugged her and patted her on the back.  Defendant and

J1's mother then voluntarily turned over the hard drive and thumb drive to Detective Nolan.  *Id.*

Next, Defendant spoke with Detective Nolan.  Defendant confessed that he had been struggling to suppress his attraction to J1 for several years.  Defendant detailed the progression of his recordings, from the early recordings taken by standing outside the bathroom window to eventually concealing the video camera in the woven basket inside the bathroom.  Defendant also confirmed that he told J1 about his feelings for her, which he explained "freaked her out."  Detective Nolan asked whether he ever touched J1 "in any way [he thought] crossed the line."  Defendant responded, "Close.  But, I mean spotting—gymnastics . . . [s]ometimes on a spot, I would move my hand slightly more than it had to be, but I never really touched any real private area."  Providing an example, Defendant explained that he would intentionally place his hand on her upper thigh, closer to her groin, instead of placing his hand on her inner thigh toward the knee.  During this conversation, Defendant also admitted he would masturbate while watching his video recordings of J1 and while sniffing her undergarments and leotards.  *Id.* at 9.

Defendant apparently created these videos and images solely for his personal use.  The record contains no evidence showing Defendant intended to sell or distribute any of these videos or images to any other person.

4

<u>Discussion</u>

> I.   *The Motion in Limine to Exclude Video Evidence, and related Motion to Dismiss*

Defendant seeks to exclude the video through his motion *in limine* on relevance grounds.  Mot. *in Limine* 2, ECF No. 6. Trial judges are authorized to rule on motions *in limine* pursuant to their general authority to manage trials, even though these rulings are not explicitly authorized by the Federal Rules of Evidence.  *Luce v. United* States, 469 U.S. 38, 41 n.4 (1984).  A district court will "exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."  *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006).  The movant has the burden of establishing that the evidence is not admissible for any purpose.  The trial judge may reserve judgment on a motion *in limine* until trial to ensure the motion is considered in the proper factual context.  *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996).

The heart of Defendant's argument is that the video is not child pornography.  Defendant contends that because the video does not contain a visual depiction of a minor "engaging in sexually explicit conduct," which is a required element under 18 U.S.C. § 2252(a)(4)(B), the video is not relevant and must be excluded.  *See* Fed. R. Evid. 401.  The statute defines "sexually

explicit conduct" as "actual or simulated . . . lascivious exhibition of the genitals or pubic area of any person."  18 U.S.C. § 2256 (2)(A)(v).  In an effort to argue that a "reasonable jury could not conclude that the visual depictions in this case constitute 'lascivious exhibition' of the young woman's genitals or pubic area," Defendant cites the so-called *Dost* factors and cases standing for the proposition that mere nudity is not sexually explicit conduct.  Mot. *in Limine* 3-6. In addition, Defendant contends that because the video must be excluded, the government cannot carry its burden of proof and the case must be dismissed.

The law is well settled that "whether a given depiction is lascivious is a question of fact for the jury."  *United States v. Frabizio*, 459 F.3d 80, 85 (1st Cir. 2006), *see also United States v. Rivera,* 546 F.3d 245, 253 (2d Cir. 2008) (approving jury instructions on issue of lasciviousness of image). Defendant is essentially moving to dismiss the indictment by asking the Court to remove the question of lasciviousness from the hands of the jury.  The government cites to several authorities which reject pretrial motions similar to the present motion.  Opp'n to Mot. *in Limine* 3-5; *see Frabizio*, 459 F.3d at 88 ("No other circuit court, as best we can tell, has ever approved the use of the *Dost* factors in a pretrial proceeding to remove the consideration of the lasciviousness of an image from

a jury."). It appears that the removal of the question of whether a video depicts a child engaging in "lascivious exhibition of the genitals or pubic area" from the hands of the jury through a pretrial motion is without precedent.

In any case, it is not this Court's role to second-guess the Grand Jury's indictment at this stage of the proceedings. The Grand Jury indictment is based primarily on the video evidence. *See* Opp'n to Mot. *in Limine* 9. The Grand Jury found probable cause that the images depicted sexually explicit conduct, and that finding alone makes the images relevant.

Even if it were appropriate for this Court to make a pre-trial determination of the lasciviousness of the images, this question nonetheless cannot be answered outside the context of the trial. "The term 'lascivious' is not self-defining." *United States v. Rivera*, 546 F.3d 245, 249 (2d Cir. 2008), *cert. denied*, 129 S.Ct. 1395 (2009). "[A]s used in the child pornography statute, the ordinary meaning of the phrase 'lascivious exhibition' means a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer." *United States v. Musumeci*, 307 Fed. App'x. 471, 473 (2d Cir. 2008) (unpublished) (quoting *United States v. Knox*, 32 F.3d 733, 745 (3d Cir. 1994); *see also*

*Rivera*, 546 F.3d at 252 ("Congress chose the word 'lascivious,' which has to do generally with sexual arousal.").

However, not every exposure of the pubic area is a lascivious exhibition. *United States v. Amirault,* 173 F.3d 28, 33 (1st Cir. 1999). The Second Circuit describes *United States v. Dost*, 636 F. Supp. 828 (S.D.Cal.1986) *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), as the "leading case" for defining lasciviousness. *Rivera*, 546 F.3d at 249. The *Dost* court devised six guiding factors to aid the trier of fact in determining "whether a visual depiction of a minor constitutes lascivious exhibition of the genitals or public area." 636 F. Supp. at 832. These factors ask the trier of fact to consider:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
> 4) whether the child is fully or partially clothed, or nude;
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Id*. The *Dost* court explicitly noted that other factors may be relevant depending on the particular case, and that "a visual depiction need not involve all of these factors to

8

be 'lascivious exhibition of the genitals of pubic area.'
The determination will have to be made based on the overall
content of the visual depiction, taking into account the
age of the minor." *Id.*

The *Dost* factors are not binding in the Second Circuit. The
factors "are not mandatory, formulaic or exclusive," and this
Circuit has acknowledged other courts' criticisms that the
factors "sweep too narrowly" and thus "might prove too generous
to defendants." *Rivera*, 546 F.3d at 250-53 (2d Cir. 2008).  The
Circuit cautions against mechanical application of the *Dost*
factors to every case.  *Id.* at 252-53 (explaining that the *Dost*
factors do not purport to be definitional and that other factors
may be relevant depending on the particular case).  Nonetheless,
"the *Dost* factors impose useful discipline on the jury's
deliberations.  They may do so imperfectly, but they have not
been much improved on." *Id.* at 253.

Thus, the question of lasciviousness is not decided by a
bright-line test.  Instead, the fact finder must make a
totality-of-the-circumstances inquiry that can only be informed
through the context of a trial.  *See, e.g., Johnson*, 639 F.3d at
440 (explaining that the jury was instructed to consider the six
enumerated *Dost* factors plus the additional factor of "whether
the picture portrays the minor as a sexual object.").
Furthermore, even a proper consideration of the *Dost* factors

requires more context than is available on the pre-trial record.[1] This totality-of-the circumstances framework for determining lasciviousness is ripe for jury consideration.

Even assuming it is appropriate for this Court to make a pre-trial determination of the lasciviousness of the images, and assuming the context provided by a trial would not be necessary in making this determination, an application of the *Dost* factors nonetheless demonstrates that the images are relevant.

The First Circuit noted "the *Dost* factors have fostered myriad disputes that have led courts far afield from the statutory language." *Frabizio*, 459 F.3d at 88. One such significant dispute concerns the number of *Dost* factors that must be present in order for an image to qualify as lascivious. *Id.* In the Third Circuit, more than one *Dost* factor must be present in order to establish lasciviousness. *United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989). The Tenth Circuit explicitly disagrees. *United States v. Wolf,* 890 F.2d 241, 245 n.6 (10th Cir. 1989) ("We do not hold that more than one *Dost* factor must be present . . . ."). The Second Circuit does not appear to require a minimum number of *Dost* factors to be present for an image to qualify as lascivious. *See, e.g., Rivera*, 546 F.3d at 253 ("[T]he jury should not be made to rely on the *Dost*

---

[1] The images in dispute are not even included in the present record.

factors with precision to reach a mathematical result, or to weigh or count them, or to rely on them exclusively.").

i.   *The First Dost factor*

The first *Dost* factor asks the jury to consider "whether the focal point of the visual depiction is on the child's genitalia or pubic area." *Dost,* 636 F. Supp. at 832.  A jury could reasonably find this first *Dost* factor satisfied in this case, but the record is insufficient to make a proper determination.  The facts show that Defendant positioned the video camera so as to capture the half of the bathroom which contained the toilet and shower entry, but a review of the images would be necessary to appraise the camera's focal point. The jury might need to consider whether the Defendant adjusted the lens or zoom feature in an attempt to focus on J1's pubic region, *Johnson*, 2011 WL 1236442, at *6, or whether the video camera was "positioned in a manner designed to capture visual images of the genital or pubic area" such as a particular placement that "results in a focus on those portions of the body." *United States v. Helton*, CR-07-70-T, 2007 WL 1674196, *7 (W.D. Okla. June 7, 2007) *aff'd,* 302 F. App'x 842 (10th Cir. 2008).  The jury might also consider the length of the exposure of the pubic area.  *See, e.g., Steen,* 634 F.3d at 824 (finding that 1.5 second exposure of public region not enough to satisfy first *Dost* factor).  Although further context is needed to make

a proper appraisal, the present record could support a finding
by the jury that the first *Dost* factor is satisfied.

### ii.  The Second Dost Factor

The second *Dost* factor asks the jury to consider "whether
the setting of the visual depiction is sexually suggestive,
i.e., in a place or pose generally associated with sexual
activity." *Dost,* 636 F. Supp. at 832.  A reasonable jury could
find that the shower and toilet were sexually suggestive
settings which satisfy this factor.  *See, e.g., United States v.
Larkin*, 629 F.3d 177, 183 (3d Cir. 2010) ("Standing alone, the
setting is not commonly associated with sexual activity.  But
showers and bathtubs are frequent hosts to fantasy sexual
encounters as portrayed on television and film.  It is
potentially as much of a setting for fantasy sexual activity as
is an adult's playroom."); *but cf*. *Helton*, 2007 WL 167196, at *7
("[T]he government conceded that a bathroom is not necessarily a
sexually suggestive location.").  Although it is far from clear
outside the context of the trial, a jury could reasonably find
the second *Dost* factor satisfied based on the present record.

### iii. The Third Dost Factor

The third *Dost* factor asks the jury to consider "whether
the child is depicted in an unnatural pose, or in inappropriate
attire, considering the age of the child." *Dost,* 636 F. Supp.
at 832.  The record indicates no unnatural posing or

inappropriate attire, as J1 was videotaped performing natural, but private, bathroom routines.  Other courts to address the third *Dost* factor in situations where the minor was surreptitiously videotaped have concluded that the factor is irrelevant.  *See, e.g., United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999) (holding the third *Dost* factor "not relevant" where the videotapes depicted children at a topless beach or jungle gym).  Nonetheless, the third factor is likely not satisfied.

### iv.   The Fourth Dost Factor

The fourth Dost factor asks the jury to consider "whether the child is fully or partially clothed, or nude." *Dost*, 636 F. Supp. at 832.  The record indicates that Defendant captured images of J1 both fully nude and partially clothed, depending on whether J1 was using the shower or toilet.  The fourth factor is clearly met.

### v.   The Fifth Dost Factor

The fifth *Dost* factor asks the jury to consider "whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity." *Dost*, 636 F. Supp. at 832.  Several courts are very critical of this factor.  The Second Circuit acknowledges the Ninth Circuit's oft-cited criticism of this inquiry.  *Rivera*, 546 F.3d at 251.  The Ninth Circuit described the fifth *Dost* factor as "over-generous to the defendant"

because "lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles." *Wiegand*, 812 F.2d at 1244.  In part, the Ninth Circuit found a particular depiction to be a "lascivious exhibition because the photographer arrayed it to suit his peculiar lust." *Id*.  Thus, the Ninth Circuit uses a subjective test in determining whether this *Dost* factor is satisfied.  *See also Rivera*, 546 F.3d at 251 (describing the *Wiegand* court's application of the fifth *Dost* factor as "a simpler, more subjective test").

Other circuit courts agree with the Ninth Circuit's critique of the fifth *Dost* factor.  *See, e.g., United States v. Wolf*, 890 F.2d 241, 246 (10th Cir. 1989) (refusing to "require the child to exhibit lust, wantonness, sexual coyness or other inappropriate precocity" in applying the fifth factor); *Frabizio*, 459 F.3d at 89 ("The absence of a sexual come-on, though, does not mean that an image is not lascivious . . . ."); *Knox*, 32 F.3d at 747 ("Children posing for pornographic pictures may suffer dramatic harm regardless of whether they have an 'adult' look of sexual invitation or coyness of their face."); *United States v. Johnson*, 639 F.3d 433, 440 (8th Cir. 2011) ("Thus, even images of children acting innocently can be considered lascivious if they are intended to be sexual . . . a

14

suggestion of sexual coyness [was] not relevant . . . .").
Although the Second Circuit explicitly acknowledges other
courts' criticisms of the fifth *Dost* factor, *Rivera,* 546 F.3d at
251, the fifth factor does have at least some significance in
this circuit.  The *Rivera* court found the presence of the fifth
factor relevant in assessing whether a photograph was
lascivious.  *Id.* at 250 ("[O]ne photo, in which the subject's
head is turned to an unseen observer (the photographer) suggests
sexual encounter . . . .").

    In any case, it does not appear likely that this factor is
met.  Because Defendant surreptitiously recorded J1 going about
routine bathroom tasks, it would be unusual for her to convey
sexual coyness or a willingness to engage in sexual activity.
As a result, this factor is likely of little help in guiding the
jury's deliberations.  *See, e.g., Horn*, 187 F.3d at 789 (8th
Cir. 1999) (holding the fifth *Dost* factor "not relevant" where
the videotapes depicted children at a topless beach or jungle
gym).

### vi.  The Sixth Dost factor

    The circuits are also split regarding the application of
the sixth *Dost* factor, which asks "whether the visual depiction
is intended or designed to elicit a sexual response in the
viewer."  *Dost*, 636 F. Supp. at 832.  Courts differ on whether
to focus on a defendant's "subjective reaction" to the depiction

15

or whether the court should examine the depiction's "intended effect." *Rivera*, 546 F.3d at 252 (quoting *Amirault*, 173 F.3d at 34).  Furthermore, courts disagree whether this inquiry should be limited to the "four corners of the image," or whether the fact-finder may consider extrinsic evidence.  *Id.* at 251-52 (citing *Frabizio*, 459 F.3d at 89-90).

The First, Third, and Fifth Circuits make an objective inquiry into the depiction's intended effect.  *Amirault*, 173 F.3d at 34 ("We believe, however, that it is a mistake to look at the actual effect of the photograph on the viewer, rather than upon the intended effect."); *Villard,* 885 F.2d at 122 ("We must, therefore, look at the photograph, rather than the viewer. If we were to conclude that the photographs were lascivious merely because [the defendant] found them sexually arousing, we would be engaging in conclusory bootstrapping rather than the task at hand—a legal analysis of the sufficiency of the evidence of lasciviousness."); *United States v. Steen*, 634 F.3d 822, 829 (5th Cir. 2011) ("Congress did not make production of child pornography turn on whether the maker or viewer of an image was sexually aroused, and this *Dost* factor encourages both judges and juries to improperly consider a non-statutory element."). These courts tend to prohibit the use of extrinsic evidence, *see, e.g., Villard*, 885 F.2d at 122, or avoid the question altogether.  *See, e.g., Frabizio*, 459 F.3d at 89 ("The issue of

16

the four corners rule, and even of what it means, has not been decided by this circuit, and we do not decide it here.  The issue is complicated, and there are arguments going different ways.").

On the other hand, the Sixth and Eighth Circuits examine the defendant's subjective reaction to the depiction in applying the sixth *Dost* factor.  *United States v. Brown*, 579 F.3d 672, 682 (6th Cir. 2009), *cert. denied,* 130 S. Ct. 1106 (2010) ("We, like our sister circuits, have adopted a test that considers whether a visual depiction is *intended* or designed to elicit a sexual response in the viewer.  The use of the word "intended" seems to establish that the subjective intent of the photographer is relevant.") (citations and quotations omitted); *United States v. Johnson*, 639 F.3d 433, 441 (8th Cir. 2011) ("Johnson said during his interview with the police that he filmed the young women because he was curious as to what they looked like nude and that his 'pervertedness got the best of [him].'  A reasonable jury could draw a reasonable inference that Johnson intended the videos to be sexual in nature and to elicit a sexual response in the viewer.").  These courts evidently permit the use of extrinsic evidence in making these subjective inquiries.  *Johnson*, 639 F.3d at 441 (using Defendant's statements about the images in finding that a jury could find the images lascivious); *Brown*, 579 F.3d at 683-84

17

(adopting a "limited context" rule which "limits the consideration of contextual evidence to the circumstance directly related to the taking of the images.").

In the Second Circuit, courts have looked to the intent of the Defendant, often derived from extrinsic evidence, in determining whether the depictions are lascivious. *See, e.g., Musumeci*, 307 Fed. App'x. at 473 ("In light of Musumeci's stated intention of engaging in sexual relations with Lisa, his stated desire to photograph her breasts and vagina during their sexual encounter, and his stated belief that those pictures would sexually arouse him, a rational trier of fact could conclude beyond a reasonable doubt that Musumeci intended to take pictures containing a 'lascivious exhibition of the genitals or pubic area' of Lisa."); *Rivera*, 546 F.3d at 250 ("A reasonable jury could therefore find that Rivera composed the images in order to elicit a sexual response in a viewer-himself.").

The *Rivera* court specifically noted that the criticism of the sixth *Dost* factor is "mitigated once one distinguishes between the production of child pornography and possession." 546 F.3d at 252.  The court points out that much of the criticism directed at this factor comes from decisions where the defendant was charged with having produced child pornography. *Id.* ("It is a point of distinction that the defendants in *Amirault*, *Villard*, and *Frabizio* were charged with having

possessed (or transported) child pornography; there was no allegation that they located the victims, arranged or posed the scenes, or otherwise produced the visual depiction."). Thus, "the sixth *Dost* factor is not easily adapted to a possession case." *Id.* In the present case, the Defendant has been charged only with possession, but he has admitted that he produced the images as well. In light of the fact that the Second Circuit makes a subjective inquiry informed by extrinsic evidence, the sixth *Dost* factor should still aid the fact finder in determining whether the images are lascivious.

A jury could reasonably find that the sixth factor is met in light of available extrinsic evidence, as the evidence supports a determination that the Defendant composed the images to elicit a sexual response for himself. Defendant admitted to masturbating to the videos, confessed his sexual desires for J1, and culled particular still frames from the videos to make a separate collection of his favorite images. *See, e.g., Horn*, 187 F.3d at 791 (finding the content of "freeze-framed portions" of a defendant's video recordings of minors relevant in determining lasciviousness).

A reasonable jury could find that several of the *Dost* factors are satisfied by Defendant's video recordings of J1. As a result, the video is clearly relevant to the question of whether Defendant possessed a visual depiction of a minor

engaging in "actual or simulated . . . lascivious exhibition of the genitals or pubic area of any person." *See* Fed. R. Evid. 401 ( "Relevant evidence has the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Although Defendant correctly contends that nudity alone is not sexually explicit conduct,[2] a reasonable jury could find that the visual depictions are sexually explicit conduct.

---

[2] In *United States v. Johnson*, the Eighth Circuit discussed the definition of "mere nudity":

> We have not previously defined "mere nudity," although other courts have suggested examples of what could constitute mere nudity. For example, in *Kemmerling,* we distinguished images of the genitalia of young males which we labeled as "lascivious" from those that could be classified as depicting mere nudity. "These [lascivious] images were not designed, for instance, simply to provide a clinical view of the portions of the children's anatomy that are pictured." *Id.* at 646. The Third Circuit, in explaining the concept of "mere nudity," stated that "[n]o one seriously could think that a Renoir painting of a nude woman or an innocuous family snapshot of a naked child in the bathtub violates the child pornography laws." *United States v. Knox,* 32 F.3d 733, 750 (3d Cir.1994), *cert. denied,* 513 U.S. 1109, 115 S.Ct. 897, 130 L.Ed.2d 782 (1995). A reasonable jury could conclude that these videos of teenage minor females disrobing and weighing themselves in the nude cannot reasonably be compared to innocent family photos, clinical depictions, or works of art.

639 F.3d at 439.

For the above reasons, the motion *in limine* to exclude video evidence is denied.  As a result, the related motion to dismiss is also denied.

II.  *The Motion to Dismiss for Lack of Jurisdiction*

Defendant argues that the statute is unconstitutional under *United States v. Lopez*, 514 U.S. 549 (1995).  Defendant specifically challenges the constitutionality of the materials-in-commerce jurisdictional element of § 2252(a)(4)(B).  Mot. to Dismiss 5.  In relevant part, the materials-in-commerce jurisdictional element from 18 U.S.C. § 2252(a)(4)(B) provides federal jurisdiction under the Commerce Clause where an individual:

> knowingly possesses, or knowingly accesses with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility or interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer . . . .

18 U.S.C. § 2252(a)(4)(B).  Additionally, Defendant argues the statute is unconstitutional as applied to the facts of the case.  Defendant claims that his alleged possession of child pornography is wholly intrastate behavior that is not sufficiently related to interstate commerce to permit federal jurisdiction under the Commerce Clause.

In clarifying the limits of Congress' commerce powers, the *Lopez* Court detailed the three categories of activity that Congress has authority to regulate under the Commerce Clause. *Id.* at 588.  The Court held that (1) "Congress may regulate the use of the channels of interstate commerce," may (2) "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce," and may (3) "regulate those activities having a substantial relation to interstate commerce . . . *i.e.*, those activities that substantially affect interstate commerce." *Id.* at 558-59.  Any exercise of Congress' commerce power must fall into one of these three *Lopez* categories or the regulation will be struck down as unconstitutional.  The regulation of child pornography under the Protection of Children Against Sexual Exploitation Act of 1977, 18 U.S.C. § 2251, *et seq.*, is an exercise of Congress' authority under Lopez's third prong.

In *United States v. Morrison*, 529 U.S. 598 (2000), the Court further defined the boundaries of Congress' authority under *Lopez*'s third prong.  The Court reaffirmed four "significant considerations" to contemplate in determining whether an activity substantially affects interstate commerce. *Id.* at 609.  First, a court must examine whether the activity involves "some sort of economic endeavor." *Id.* at 611.  Second, an express jurisdictional element may establish its connection

with or effect on interstate commerce. *Id.* at 611-12.  Third, the statute or its legislative history may include express congressional findings of the activity's effects on interstate commerce. *Id.* at 612.  Fourth, the court must consider whether the link between the activity and a substantial effect on interstate commerce may be too attenuated. *Id.*

In *Morrison*, the Court weighed these four considerations in striking down 42 U.S.C. § 13981, a statute which provided a civil remedy for victims of gender-motivated violence. *Id.* at 619.  The Court found that "[g]ender-motivated crimes of violence are not, in any sense of the phrase, economic activity," and noted that the statute "contained no express jurisdictional element." *Id.* at 611-13.  Weighing the four considerations, the Court held that 42 U.S.C. § 13981 exceeded Congress' Commerce Clause authority. *Id.* at 618-19.

The Second Circuit has spoken on the constitutionality of the materials-in-commerce jurisdictional elements of other similarly-worded provisions in the Protection of Children Against Sexual Exploitation Act of 1977, 18 U.S.C. § 2251, *et seq*.  In *United States v. Holston*, the Second Circuit addressed a commerce power challenge to the materials-in-commerce jurisdictional prong of § 2251(a), which is substantively indistinguishable from the relevant language in § 2252(a)(4)(B). 343 F.3d 83, 88 n.2 (2d Cir. 2003) (finding that § 2251(a) is

23

"nearly identical" and thus considered "equivalent" to the jurisdictional language in § 2252(a)(4)(B)).  Jurisdiction relied upon the fact that Defendant Holston used videotapes and video recording equipment which were manufactured out of state to produce child pornography.  *Id.* at 84.

Applying *Lopez* and the *Morrison* factors, the *Holston* court ruled the statute facially constitutional.  Addressing the first *Morrison* factor, the *Holston* court found that production of child pornography is commercial in nature.  *Id.* at 88-89 (citing *Proyect v. United States*, 101 F.3d 11 (2d Cir. 1996)).  The court then ruled that the second *Morrison* factor, which asks whether the statute contains a limiting jurisdictional element, was "at least superficially met."  *Id.* at 89.  Describing such a broad jurisdictional element as "almost useless," the court nonetheless held that "the failure of the jurisdictional element effectively to limit the reach of the statute is not determinative" if the fourth *Morrison* factor is present.  *Id.* Proceeding to the third *Morrison* factor, the court observed that the statute "was well supported by legislative findings documenting both the existence of an extensive national market in child pornography and that market's reliance on the instrumentalities of interstate commerce." *Id.*

Turning to the fourth factor, which is whether the relationship between the regulated activity and a substantial

effect on interstate commerce is attenuated, the court began by stating "[t]here can be no debate that interstate trafficking in child pornography has an effect on interstate commerce." *Id.* (quoting *United States v. Angle*, 234 F.3d 326, 337 (7th Cir. 2000)).  The court proceeds to reason that "[s]ince no one would doubt Congress's ability to regulate a national market in child pornography, the question becomes 'whether Congress could rationally have determined that it must reach local, intrastate conduct in order to effectively regulate a national interstate market.'"  *Id.* at 90 (quoting *United States v. Kallestad*, 236 F.3d 225, 229 (5th Cir. 2000)).  "Because much of the child pornography that concerned Congress is homegrown, untraceable, and enters the market surreptitiously," the *Holston* court concluded that Congress "can prohibit local production that feeds the national market and stimulates demand, as this production substantially affects interstate commerce."  *Id.*

The *Holston* court then turned to the Defendant's as-applied challenge.  Defendant argued that the government failed to show a nexus to interstate commerce because the government did not prove Defendant intended to sell the pornography or that the pornography ever entered interstate commerce.  *Id.* at 90.  The court held this as-applied challenge foreclosed by *Proyect v.*

*United States*, 101 F.3d 11 (2d Cir. 1996).[3]  *Id.* at 90-91

(explaining that the *Proyect* court held "when Congress regulates

a class of activities that substantially affect interstate

commerce, the fact that certain intrastate activities within

this class, such as growing marijuana solely for personal

consumption, may not actually have a significant effect on

interstate commerce is irrelevant.") (citations and punctuation

omitted).  "The nexus to interstate commerce . . . is determined

by the class of activities regulated by the statute as a whole,

---

[3] In *Proyect*, the Second Circuit addressed a challenge to the
constitutionality of 21 U.S.C § 841(a)(1), which criminalizes
the manufacture of marijuana.  101 F.3d at 11.  The defendant
argued that Congress exceeded its authority because the statute
criminalizes the manufacture of marijuana without requiring an
intent to distribute.  The defendant contended that while
"growing marijuana for distribution has a significant impact on
interstate commerce, growing marijuana for personal consumption
does not."  *Id.* at 13.  The court responded that Congress has
the power:

> [T]o declare that an entire class of activities
> affects commerce. The only question for the courts is
> then whether the class is within the reach of the
> federal power. The contention that in Commerce Clause
> cases the courts have the power to excise, as trivial,
> individual instances falling within a rationally
> defined class of activities has been put entirely to
> rest.

*Id.* (quoting *Maryland v. Writz*, 392 U.S. 183, 192-93 (1968).
The court denied the challenge, characterizing defendant's as-
applied argument as "irrelevant."  *Id.* at 14.  Thus, *Proyect* is
cited in the Second Circuit for the proposition that where
Congress properly regulates a class of activities substantially
affecting interstate commerce, certain intrastate activities
which may not have a significant effect on interstate commerce
nonetheless fall within Congress's regulatory commerce power.

not by the simple act for which an individual defendant is convicted." *Id.* (quoting *Proyect*, 101 F.3d at 13).  The *Holston* court thus denied the as-applied challenge.  *Id.* at 91.

One year later, the Second Circuit addressed a similar challenge in *United States v. Harris*, 358 F.3d 221 (2d Cir. 2004).  In *Harris*, the Defendant challenged the constitutionality of the materials-in-commerce jurisdictional prong of 18 U.S.C. § 2252A(a)(5)(B), which, like § 2251(a), is substantively indistinguishable from the relevant language in § 2252(a)(4)(B).  Unlike *Holston*, Defendant Harris was charged under a provision of the Act prohibiting possession, as opposed to production, of child pornography.  Like *Holston*, the Defendant challenged the materials-in-commerce jurisdictional prong as unconstitutional.

Instead of applying each of the *Morrison* factors, then-Circuit Judge Sotomayor cited *Holston* in denying the facial constitutional challenge. The court found that any difference between the charge of production in *Holston* and Defendant Harris's charge of possession to be immaterial, holding that "Harris's challenge to § 2252A(a)(5)(B) cannot be distinguished in any meaningful way from this Court's holding in *Holston*.  The fact that Harris challenges a provision located in a different section of the Act is a distinction without a difference." *Id.* at 223.  The court proceeded to deny Harris' as-applied

challenge, citing *Holston* and *Proyect* for the proposition that where Congress properly regulates a class of activities substantially affecting interstate commerce, certain intrastate activities which may not have a significant effect on interstate commerce nonetheless fall within Congress's regulatory commerce power. *Id.* at 223.

As shown in *Holston* and *Harris*, the Second Circuit has already held that production of child pornography under 18 U.S.C. § 2251(a) and the possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B) are facially constitutional. *See supra*, pp. 23-28. Following the reasoning employed by then-Circuit Judge Sotomayor in *Harris*, this Court finds that the Defendant's challenge to § 2252(a)(4)(B) "cannot be distinguished in any meaningful way from [the Second Circuit's] holding in *Holston*." *Harris*, 358 F.3d at 223. In light of *Holston* and *Harris*, Defendant's facial challenge cannot succeed.

Defendant also argues that the statute is unconstitutional as applied to the facts of this case. Defendant claims that the link between his conduct and interstate commerce is too attenuated because his depictions "have no tie to any sort of national market." Mot. to Dismiss 7.

Defendant's as-applied challenge is premature. The government correctly contends that a defendant may not make an as-applied challenge without a record to establish the specific

facts in the case.  The cases addressing as-applied challenges involve the review of a conviction.  *See, e.g., Holston,* 343 F.3d at 90-91; *Harris*, 358 F.2d at 223.

The Court does note, however, that Defendant's reliance upon the intrastate nature of the depictions may have little merit. Defendant argues that the statute is unconstitutional as applied to him because all conduct involving the depictions was wholly intrastate and there is no evidence Defendant intended to sell or distribute the depictions.  Mot. to Dismiss 7.  Like the as-applied challenges in *Holston* and *Harris*, Defendant's challenge appears foreclosed by *Proyect.  See supra*, pp. 25-30; *see also Gonzales v. Raich*, 545 U.S. 1, 17 (2005) ("Our case law firmly establishes Congress' power to regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce.").  Because the statute is facially constitutional, Defendant cannot successfully make an as-applied challenge by arguing his conduct occurred wholly intrastate.  *See Holston*, 343 F.3d at 90 ([W]hen Congress regulates a class of activities that substantially affect interstate commerce, the fact that certain intrastate activities within this class . . . may not actually have a significant impact on interstate commerce is irrelevant.") (citations and punctuation omitted).

For the above reasons, the motion to dismiss for lack of jurisdiction is denied.

Dated at Burlington, in the District of Vermont, this 28th day of November, 2011.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge